UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DENEHY,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS PORT AUTHORITY and SWISSPORT FUELING, INC.,<br><br>Defendants. | CIVIL ACTION NO. 13-12473-WGY |

MEMORANDUM AND ORDER

YOUNG, D.J. September 5, 2014

## I. INTRODUCTION

This case arises in connection with a jet fuel spill at Boston Logan International Airport ("Logan Airport") that led to the discharge of fuel into the waters of Boston Harbor. John Denehy ("Denehy"), a Massachusetts commercial clamdigger, brings this action under general maritime law and the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq., seeking recovery from the Massachusetts Port Authority ("Massport") and Swissport Fueling, Inc. ("Swissport") (collectively, "Defendants") for damages sustained as a result of the fuel spill's alleged impact on profitable clambeds abutting the airport. Massport and Swissport now move to dismiss Denehy's complaint, on the grounds that the

Court lacks jurisdiction over his maritime claims and that his statutory claims are not ripe for review.

**A. Procedural Posture**

On October 3, 2013, Denehy filed a complaint in this Court against Massport and Swissport seeking damages under general maritime law and the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq.[1] See Compl., ECF No. 1. Massport responded on November 15, 2013, by filing a motion to dismiss Denehy's complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def. Massachusetts Port Authority's Mot. Dismiss, ECF No. 13; see Mem. Massachusetts Port Authority Supp. Mot. Dismiss ("Defs.' Mem."), ECF No. 14. Swissport followed suit on December 4, 2013, adopting Massport's arguments in support of its own motion. Def. Swissport Fueling Inc's Mot.

[1] Denehy's complaint is styled as a putative class action under Federal Rule of Civil Procedure 23.2, brought on behalf of all members of the Boston Clamdiggers Association, an unincorporated association of individual licensed commercial clamdiggers in Massachusetts. Compl. ¶¶ 2, 7. In response, however, to Massport and Swissport's arguments challenging the sufficiency of his complaint as the basis for a class action, Denehy has indicated a desire to amend his complaint to join each member of the Boston Clamdiggers Association as individual plaintiffs in lieu of class litigation. See Opp'n Defs.' Mot. Dismiss 3, ECF No. 23.

As Denehy has yet to file a motion to amend in compliance with the rules of this Court, for the purposes of this opinion the Court will treat Denehy as the sole plaintiff in this case and disregard for the time being the Defendants' arguments related to class action.

Dismiss, ECF No. 20; see Def. Swissport Fueling Inc's Mem. Points & Authorities Supp. Mot. Dismiss, ECF No. 21.

Denehy filed a response in opposition to the motions to dismiss on December 16, 2013. Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 23. Massport and Swissport jointly replied to Denehy's response on January 2, 2014. Defs.' Reply Mem. Supp. Mots. Dismiss, ECF No. 26. This Court heard oral argument on Massport and Swissport's motions at Boston College Law School on Feburary 11, 2014, and took the matter under advisement. Elec. Clerk's Notes, Feb. 11, 2014, ECF No. 30.

**B. Alleged Facts**

Denehy is a licensed commercial clamdigger who, along with other clammers, harvests clams from beds located in Boston Harbor. Compl. ¶¶ 2, 7. Some of those beds directly abut the grounds of Logan Airport. Id. ¶¶ 7-9. Massport is an independent public authority created by the state legislature and responsible for, among other things, owning and operating Logan Airport. Massport Investor Relations, https://www.massport.com/about-massport/investor-relations. Swissport is a corporation responsible for aircraft refueling activities at Logan Airport. Compl. ¶ 4.

On October 7, 2010, a Swissport employee caused a jet fuel spill at Logan Airport by disabling the safety device on a fuel nozzle and leaving the pump unattended during aircraft

refueling. Id. ¶¶ 13-14. As a result, jet fuel spilled into the waters of Boston Harbor and allegedly polluted several productive and profitable clambeds. See id. ¶¶ 13, 16-18. The United States Coast Guard ("Coast Guard") investigated the spill but did not immediately designate responsible parties. Id. ¶ 22. Since the date of the fuel spill, a dramatic reduction in the number of live soft-shell clams in the waters surrounding Logan Airport has substantially harmed the livelihoods of Denehy and his fellow clammers. Id. ¶¶ 16-19.

Denehy and his colleagues met with Massport representatives on March 2, 2011, to discuss the effect of the October fuel spill on the Boston Harbor clambeds, but discussions were unproductive. Id. ¶ 21. Denehy and others subsequently sought damages from the National Pollution Funds Center, an agency of the Coast Guard responsible for administering the Oil Spill Liability Trust Fund. Id. ¶ 23; see Oil Pollution Act of 1990 (OPA), http://www.uscg.mil/npfc/About_NPFC/opa.asp. The Fund is a creature of the OPA, authorized to disburse, among other things, "[p]ayment of claims for uncompensated removal costs and damages" resulting from oil pollution. The Oil Spill Liability Trust Fund (OSLTF), http://www.uscg.mil/npfc/About_NPFC/osltf.asp.

According to Denehy's memorandum in opposition to the Defendants' motions to dismiss, clammers began submitting claims

to the Fund in July 2013. Pl.'s Opp'n 2. The following month, on August 13, 2013, the Coast Guard finally designated Massport and Swissport as the parties responsible for the fuel spill. Compl. ¶ 23. Thirty days later, on September 12, 2013, clammers presented claims for damages to the Defendants. Id. ¶ 24. Denehy's opposition memorandum states that Swissport denied their claims on December 11, 2013, after the commencement of this litigation, and that Massport has never responded to the claims. Pl.'s Opp'n 2.

## II. ANALYSIS

### A. Admiralty Jurisdiction

The Defendants seek dismissal of Counts I and II of the complaint on the ground that this Court lacks subject matter jurisdiction over these claims. Because Counts I and II sound in general maritime law, Denehy seeks to invoke this Court's authority to hear cases in admiralty. See 28 U.S.C. § 1333 (granting district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction"). According to the Defendants, however, admiralty jurisdiction is not appropriate given the facts of this case. Defs.' Mem. 6.

#### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal when the Court lacks subject matter jurisdiction to entertain a matter under consideration.

Fed. R. Civ. P. 12(b)(1). When, as here, the defendant "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency," the Court "must credit the plaintiff's well-pleaded factual allegations . . . [and] draw all reasonable inferences from them in her favor." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). If, on these facts and inferences, the plaintiff has not adequately pled a basis for the Court's subject matter jurisdiction, the Court ought grant the defendant's motion and dismiss the case. See id.; see also Kottori v. F.B.I., 784 F. Supp. 2d 83, 84-85 (D. Mass. 2011) (Bowler, M.J.).

### 2. Evolution of the Test for Admiralty Jurisdiction

Until relatively recently, the scope of federal admiralty tort jurisdiction was solely determined by location. The traditional rule was that any tort occurring on navigable waters was subject to maritime law. See, e.g., The Plymouth, 70 U.S. 20, 33-34 (1865). Since 1972, however, the Supreme Court has issued a series of rulings developing a more rigorous and extensive test for whether such jurisdiction applies. The foundation for the modern rule was laid by Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1972), in which the Supreme Court ruled that in the context of aviation-related torts, "the wrong [must] bear a significant relationship to traditional maritime activity." Id. at 268. This requirement

was later extended to putative admiralty cases beyond the aviation context by Foremost Insurance Co. v. Richardson, 457 U.S. 668, 673-74 (1982).

Foremost also elaborated on the nexus requirement by articulating its two key elements: (1) the potential for an incident to affect maritime commerce, and (2) the existence of a "substantial relationship" between an incident and traditional maritime activity. Id. at 675 n.5. As was later made clear in Sisson v. Ruby, 497 U.S. 358 (1990), these elements refer to the "general character of the activity" giving rise to the facts of the case, not the specific features of the actual events that took place. Id. at 365; see also id. at 363-65. In other words, "a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity," id. at 363, or bears "a substantial relationship to a traditional maritime activity," id. at 365 (internal quotation marks omitted). Finally, five years after Sisson, the Supreme Court revisited the subject of admiralty jurisdiction and, among other things, clarified that when determining whether a substantial relationship to traditional maritime activity exists, the focus of the inquiry is on the tortfeasor. See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 539-40 (1995) ("We ask whether a tortfeasor's activity, commercial or noncommercial, on

navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.").

While in this case, the Defendants challenge the applicability of admiralty jurisdiction on two grounds, the Court need only examine one to determine whether jurisdiction lies. The Defendants contend that airplane fueling, the activity giving rise to their oil spill into Boston Harbor, does not bear a substantial relationship to traditional maritime activity. Defs.' Mem. 8. Denehy responds by urging the Court to focus on the maritime nature of the activities of the injured parties, the clamdiggers. Pl.'s Opp'n 7.

As a preliminary matter, the Court cannot adopt the injury-centered approach urged by Denehy. His argument relies solely on Union Oil Co. v. Oppen, 501 F.2d 558 (9th Cir. 1974), in which the Ninth Circuit ruled in favor of fishermen plaintiffs whose livelihoods were harmed by an oil spill. The court based its decision on the conclusion that fishing is a traditional maritime activity. Id. at 561. Not only is this authority not binding on this Court, it predates much of the Supreme Court case law developing the current jurisdiction standard. What's more, the particular holding Denehy invokes has been directly overruled by the Grubart Court's pronouncement that it is the activity of the tortfeasor, not the injured party, which

controls the substantial relationship analysis. See Grubart, 513 U.S. at 539-40.

### 3. Relationship to Traditional Maritime Activity

The issue for the Court to resolve is whether Massport and Swissport's refueling activities at Logan Airport are, by their general character, sufficiently related to traditional maritime activity to support the exercise of admiralty jurisdiction. The Court holds that they are not.

Massport and Swissport's activities take place entirely on land and have no intrinsic relationship to water vessels, navigable waters, or other maritime activity. While it is true that Swissport was refueling an airplane which would likely fly over at least some part of the harbor, it is beyond dispute that airplanes do not come under maritime jurisdiction solely by virtue of their proximity to navigable waters. See Executive Jet, 409 U.S. at 261 ("[M]aritime locality alone is not a sufficient predicate for admiralty jurisdiction in aviation tort cases."). Since admiralty jurisdiction does not necessarily apply to an airplane taking off from Logan Airport and flying over Boston Harbor, it cannot be that such jurisdiction necessarily applies to that airplane while it is grounded and

stationary on a land-based runway. More is required to establish a substantial relationship with maritime activity.[2]

Further, Massport and Swissport's operations do not have a substantial relationship with maritime activity just because Logan Airport's runways are directly adjacent to a body of water. Even under the traditional locality test predating Executive Jet, admiralty jurisdiction did not "extend to accidents on piers, jetties, bridges, or even ramps or railways running into the sea." Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352, 360 (1969). Some courts have since stated that even activities taking place on land-like fixed structures on the water, like offshore drilling platforms, are not subject to

[2] Courts have found, for example, that aircraft have a substantial relationship with maritime activity when they perform tasks traditionally carried out by waterborne vessels, like flying transoceanic routes or ferrying passengers to and from an island. See, e.g., Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 218-19 (1986) (holding that a helicopter ferrying passengers to and from an offshore oil platform "was engaged in a function traditionally performed by waterborne vessels," thus conferring maritime jurisdiction); Isla Nena Air Servs., Inc. v. Cessna Aircraft Co., 380 F. Supp. 2d 74, 79-80 (D.P.R. 2005) (collecting cases), aff'd on other grounds, 449 F.3d 85 (1st Cir. 2006). These cases follow through on the Supreme Court's suggestion in Executive Jet that airplanes taking the place of waterborne vessels are analytically distinct from airplanes flying, say, "almost entirely over land" and "within the continental United States." Executive Jet, 409 U.S. at 272.

Since the complaint in this case, however, contains no facts alleging that the airplane being fueled by Swissport was intended to perform the tasks of a waterborne vessel, the Court will not rule on whether such pleadings would change its conclusion here.

admiralty jurisdiction unless the activities are maritime in nature. See, e.g., Solet v. CNG Producing Co., 908 F. Supp. 375, 378 (E.D. La. 1995) (holding that an accident stemming from the use of an oil platform-based crane was not sufficiently connected to maritime activity to support admiralty jurisdiction).

Given that offshore platforms are even more squarely situated in a marine environment than Logan Airport, there is nothing about the relationship between Swissport's airplane refueling and Boston Harbor that ought confer maritime jurisdiction on this action. To the extent that Massport and Swissport engage in operations that could affect or be affected by their proximity to the water, that is more relevant to the outdated locality-based test than it is to the new test requiring a more concrete relationship beyond mere proximity. The Court holds that it cannot assert federal admiralty jurisdiction here, and Counts I and II of Denehy's complaint are therefore DISMISSED.[3]

[3] The Court's ruling forecloses the need to adjudicate Massport's further argument that even if this case does lie in admiralty, such jurisdiction is supplanted by the OPA. Defs.' Mem. 8-9. The Court nonetheless mentions this argument to observe that the parties' arguments raise an issue that may be ripe for clarification -- namely, whether and how the Supreme Court's rulings in Exxon Shipping Co. v. Baker, 554 U.S. 471 (2008), and Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009) affect the scope of the OPA.

**B. OPA Presentment**

The Defendants further ask this Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the third and final count of Denehy's complaint, which seeks recovery of damages under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 et seq. According to Massport, Denehy fails to state a claim under the OPA because he failed to meet the statute's presentment requirement prior to filing before this Court.

---

The First Circuit previously has concluded that "Congress intended the enactment of the OPA to supplant the existing general admiralty and maritime law." South Port Marine, LLC v. Gulf Oil Ltd. P'ship, 234 F.3d 58, 65 (1st Cir. 2000). Since that decision, the Supreme Court has ruled that the Federal Water Pollution Control Act, 33 U.S.C. § 1321, and the Jones Act, 46 U.S.C. § 30104(a), relating to injured seamen, do not displace remedies available under general maritime common law. See Atlantic Sounding, 557 U.S. at 416-17 ("[N]othing in the statutory scheme for maritime recovery restricts the availability of [common law] punitive damages . . . ."); Exxon Shipping, 554 U.S. at 488-89 ("[W]e find it too hard to conclude that a statute expressly geared to protecting 'water,' 'shorelines,' and 'natural resources' was intended to eliminate sub silentio oil companies' common law duties . . . ."). At least one court, even taking note of the First Circuit's ruling in South Port Marine in the process, has ruled that the principles of interpretation controlling Exxon Shipping and Atlantic Sounding also extend to the OPA. See In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010, 808 F. Supp. 2d 943, 960-62 (E.D. La. 2011) (ruling that general maritime claims against non-responsible parties connected to the 2010 Deepwater Horizon oil spill were not displaced by the OPA).
Because this Court lacks admiralty jurisdiction over the instant case, it will do no more than point out a possible tension between the Exxon Shipping and Atlantic Sounding decisions and the preexisting law of this Circuit.

### 1. Standard of Review

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In making its determination, the Court must accept factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

A mere recital of the legal elements supported only by conclusory statements, however, is not sufficient to state a cause of action. Twombly, 550 U.S. at 555. "[C]ourts increasingly insist that more specific facts be alleged where an allegation is conclusory." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F. 3d 762, 773 (1st Cir. 2011) (citing Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009)). Even at the motion to dismiss stage, "'naked assertion[s]' devoid of 'further factual enhancement'" are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

### 2. Analysis

Enacted in response to the Exxon Valdez and other oil spill disasters, the OPA establishes a federal liability scheme under which parties affected by oil pollution can recover costs and damages. See 33 U.S.C. § 2702(a); South Port Marine, 234 F.3d at 64. The OPA's presentment requirement provides that unless certain exceptions apply, a prospective claimant must initiate the recovery process by presenting his claims to the parties responsible for the pollution that harmed him. 33 U.S.C. § 2713(a). A claimant may ultimately seek recovery through other means, such as litigating a cause of action like this one or by petitioning the federally administered Oil Pollution Fund ("the Fund") for compensation, but he can only do so if all responsible parties first deny liability, or if his claims are not paid out within 90 days from the date of presentment or the date on which a responsible party begins advertising procedures for making claims, whichever comes later. Id. § 2713(c). In other words, absent circumstances that do not apply here, a prospective claimant must wait 90 days for a reply to his presented claims before filing suit in federal court or making a claim against the Fund.

The catch is that the OPA's presentment requirement operates independently of the law's other statutes of limitations. From the day that oil pollution has occurred and its effect on a prospective claimant is "reasonably discoverable

with the exercise of due care," the claimant has three years to bring an action for damages in federal district court. Id. § 2717(f)(1); see also id. § 2712(h)(2) (setting the same deadline to submit claims against the Fund). To satisfy the presentment requirement while also preserving his right to sue under the statute of limitations, then, the claimant must present his claims for damages to the designated responsible parties at least 90 days before the end of the three-year window.

But here, Denehy and his colleagues were wedged in an untenable space between the two provisions. The OPA gives the President the responsibility to designate the parties responsible for an oil spill (or, if they cannot be identified, to advertise the availability of the Fund to potential claimants). Id. § 2714(a). Here the Coast Guard, the delegatee of this responsibility, see Oil Pollution Act of 1990 (OPA), http://www.uscg.mil/npfc/About_NPFC/opa.asp, allegedly failed to designate responsible parties in this case until August 13, 2013 -- 55 days before the end of the three-year window to file the instant lawsuit. Compl. ¶ 23. At that point, Denehy simply could not have met both the presentment requirement and the statute of limitations. He chose to meet the latter, filing in this Court a few days before the three-year deadline but scarcely a month

after presenting claims to Massport and Swissport.[4] Pl.'s Opp'n 13. Denehy does not deny that he has failed strictly to meet the OPA's presentment requirement, but he asks this Court to allow his case to go forward as a matter of discretion.

Notably, Judge Carl J. Barbier of the U.S. District Court for the Eastern District of Louisiana recently has permitted unpresented claims to proceed in multidistrict litigation against the parties responsible for the 2010 Deepwater Horizon oil spill into the Gulf of Mexico. See In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010, 808 F. Supp. 2d 943, 964-65 (E.D. La. 2011). Judge Barbier allowed all claims, presented or not, to survive the motion to dismiss stage because strictly enforcing the OPA's presentment scheme would have required the court to undertake the "impractical, time-consuming, and disruptive" task of reviewing over 100,000 individual claims. Id. at 965. Denehy seeks similar treatment, but the facts before this Court are fundamentally

---

[4] Denehy contends that not only was the Coast Guard's responsible party designation late, it perversely worsened his litigation posture because, according to Denehy, maritime claims against non-responsible parties are not displaced by the OPA and not subject to the statute's presentment requirement. See Pl.'s Opp'n 13 (citing Deepwater Horizon, 808 F. Supp. 2d. at 969). He reasons that if the Coast Guard had remained silent as to responsible parties, he would have been free to press claims in general maritime law against Massport and Swissport without having to present claims 90 days beforehand. Id. This argument is moot, however, as maritime jurisdiction is not applicable to this case.

different from the circumstances giving rise to the Deepwater Horizon litigation,[5] and this Court expresses no opinion on the approach there adopted.

The Court is charged to do more, however, than simply read the letter of the OPA. Statutes are to be interpreted in accordance with their "plain and ordinary meaning," United States v. Lachman, 387 F.3d 42, 50 (1st Cir. 2004) (quoting Textron Inc. v. Comm'r, 336 F.3d 26, 31 (1st Cir. 2003)), in order to give practical effect to the beneficial goals that impelled Congress to enact the law, see, e.g., Johnson v. United States, 529 U.S. 694, 710 n.10 (2000) ("Our obligation is to give effect to congressional purpose so long as the congressional language does not itself bar that result."); Holloway v. United States, 526 U.S. 1, 9 (1999); John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 94-95 (1993). Here, that goal was to provide appropriate relief to those injured by oil spills into the nation's waterways. See, e.g., S. Rep. No. 101-94, at 9 (1989), reprinted in 1990 U.S.C.C.A.N. 722, 731 ("The principal concept of this bill is to provide ready and complete compensation for any party suffering

[5] Denehy makes one further argument -- that since he and his colleagues met and attempted to privately settle with Massport and Swissport several times before seeking recovery in this Court, Denehy ought be credited for his "substantial compliance" with the spirit of the OPA's presentment requirement. Pl.'s Opp'n 14. He presents no relevant authority, however, suggesting that such a proposition merits meaningful consideration.

damages from discharges of oil or hazardous substances."); 135 Cong. Rec. E842-02 (1989) (statement of Rep. Walter B. Jones, then chairman of the Committee on Merchant Marine and Fisheries). Moreover, statutes are to be interpreted so as to give practical effect to every section in an harmonious way, see Federal Trade Comm'n v. Mandel Bros., Inc., 359 U.S. 385, 389 (1959) (citation omitted), such that an absurd result may be avoided, see Summit Inv. & Dev. Corp. v. LeRoux, 69 F.3d 608, 610 (1st Cir. 1995) (citation omitted).

Here, the two sections best may be harmonized equitably by staying this timely filed action until a 90-day period for presentment has passed. It is true that many more than 90 days have passed since Denehy presented his claims to the Defendants and that Swissport has already given its reply, but to ensure that the Defendants' statutory right to respond to presentment is accommodated beyond question, this action will be stayed until the earlier of (1) 90 days from the date of publication of this opinion, or (2) the date on which both Massport and Swissport have rendered a denial to Denehy's presented claims. Once that period has passed without closure under the statute, this action may proceed.

**III. CONCLUSION**

For the foregoing reasons, the motions to dismiss brought by Massport, ECF No. 13, and Swissport, ECF No. 20, are GRANTED

as to Counts I and II of the complaint, and DENIED as to Count III. Instead, this action is STAYED for a period of 90 days to allow the presentment requirement to accomplish its congressionally mandated goal.

**SO ORDERED.**

WILLIAM G. YOUNG
DISTRICT JUDGE